UNITED STATES of America, Plaintiff-Appellant,

v.

TEXAS EDUCATION AGENCY, Defendant,

La Vega Independent School District, Defendant-Appellee.

No. 71–3135.

United States Court of Appeals, Fifth Circuit.

May 10, 1972.

Brian K. Landsberg, Bruce E. Davis, Thomas M. Keeling, Attys., Dept. of Justice, Washington, D. C., William S. Sessions, U. S. Atty., San Antonio, Tex., for plaintiff-appellant.

Tommy P. Herring, Peeler Williams, Jr., Minor L. Helm, Jr., Waco, Tex., Crawford Martin, Atty. Gen., State of Texas, Austin, Tex., for defendant-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The Supreme Court's decision in Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, abandoned the doctrine of "all deliberate speed" in school desegregation suits. Sitting en banc, this Court implemented *Alexander's* mandate that formerly dual school systems begin immediately to operate as unitary ones. Singleton v. Jackson Municipal Separate School District, 1970, 419 F.2d 1211, cert. denied 1970, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530.

*Singleton* prescribed detailed procedures and standards for the expeditious elimination of dual educational structures. With respect to personnel reductions necessitated by desegregation, we directed:

"If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

"Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee." 419 F.2d at 1218.

This appeal requires us to weigh the degree of compliance with this *Singleton* requirement attained by the La Vega Independent School District following the deannexation of a portion of that district pursuant to a court-ordered desegregation plan.

## BACKGROUND

The United States of America on August 7, 1970, brought suit below against the Texas Education Agency and seven school districts within that judicial district seeking desegregation of public schools in the affected districts. The La Vega Independent School District was one of the named defendants. On September 17, 1970, the district court entered an order approving a plan for the disestablishment of the La Vega dual school structure beginning in the 1970–1971 academic year. This order contained the standard *Singleton* instructions regarding professional staffs, quoted *supra*.

The La Vega Independent School District, on July 16, 1971, moved to join the adjacent Waco Independent School District as a party defendant and to modify the September 17, 1970 order to provide for the deannexation of a portion of the La Vega District to the Waco District. An adjustment of boundary was granted by the district court on July 28, 1971, and as a result approximately 1400 students, mostly black, were reassigned from La Vega to Waco. This adjustment left the La Vega District with approximately 2060 students, about 20% black and 80% white.

On July 29, 1971, the La Vega District sent letters of dismissal to 67 of the District's faculty and staff in an effort to adjust to the student assignment alteration flowing from the July 28, 1971, order of the district court. Of the staff members dismissed, 58 were black teachers and 4 were black administrators. Only 5 of those dismissed were white and none of them occupied classroom teacher unit positions. These dismissals changed the racial composition of the La Vega faculty and staff from approximately 50% of each race to 21% black and 79% white. Each letter of dismissal, in part, stated:

"Judge Jack Roberts has moved the boundary line between La Vega and Waco School Districts, thus placing some 1400 scholastics into the Waco District. This order means that La Vega's black-to-white ratio of teachers and students has now been drastically reduced.

"This means that we are going to have to reduce our teachers in the same proportion in which our scholastics have been reduced."

## THE LITIGATION BELOW

The United States, on August 13, 1971, applied to the district court for a temporary restraining order and an order to show cause why the dismissed individuals should not be reinstated pending the development and application of objective criteria to all the professional staff of the system. The United States asked that the Waco Independent School District be required to make equitable provision for the retention of those professional staff members dismissed by the La Vega District. The claim of the United States was that the La Vega District had utilized a non-objective teacher rating system for the selection of teachers to be dismissed. It was further asserted that the La Vega District, after the dismissals of July 29, 1971, hired ten new white teachers and rehired four white teachers who had resigned or retired prior to the dismissals without first offering these positions to dismissed black personnel.

The La Vega District opposed the United States' application on several grounds:

(a) Prior to the dismissals of July 29, 1971, approximately 27 white teachers had resigned. In addition, as a result of a drop in average daily attendance, La Vega was due to lose 14 teaching positions for the forthcoming academic year.

(b) The criteria employed by the La Vega District in selecting teachers and administrators for dismissal were objective, nondiscriminatory and reasonable.

(c) Approximately 46 of the dismissed teachers had been hired by the Waco District and only 3 dismissed faculty members were still unemployed.

(d) 39 dismissed teachers had retained private counsel and were pursuing their administrative remedies according to Texas law.

The Waco District disclaimed responsibility for the La Vega dismissals and asserted that it had done everything within its power to absorb the dismissed professional force.

A hearing was held in the district court on September 7, 1971. Only the superintendent of the Waco District gave live testimony. The balance of the evidence admitted at the hearing consisted of stipulations of fact and depositions. At the conclusion of the hearing, the district judge denied the United States' application orally from the bench. On September 28, 1971, the district judge entered an order reciting that:

> "The Court having considered the pleadings, stipulations, agreed facts and testimony introduced, as well as argument of counsel thereon, is of the opinion that the relief sought is not called for by the evidence presented and should be denied."

The district judge at that time made no further findings of fact or conclusions of law.

The United States appealed to this Court and on January 4, 1972, we vacated the judgment of the district court and remanded the cause with directions for the district court to make findings and conclusions within 30 days as to whether the La Vega Independent School District had utilized nonracial objective criteria in the selection of staff members for dismissal. We retained jurisdiction during the limited remand. United States v. Texas Education Agency and La Vega Independent School District, 1972, 452 F.2d 1203.

Pursuant to our direction the lower court conducted a hearing on January 17, 1972. The United States, the La Vega District and the Waco District participated. Counsel for the 39 dismissed staff members who were pursuing their state administrative remedies was invited to take part but he did not attend. On January 25, 1972, the district judge entered his findings of fact and conclusions of law, which reaffirmed his previous denial of the United States' application for injunctive relief. Since these findings and conclusions are at issue on this appeal we quote from them verbatim:

### Findings of Fact

"6. During April, 1971, the Board of Trustees of the La Vega Independent School District adopted the teacher rating sheet introduced as Government's Exhibit 2 for use in the event faculty and staff reductions became necessary. Adoption of this rating sheet had unanimously been recommended by a bi-racial faculty staff committee, consisting of two (2) black and two (2) white members, that had specifically been formed for the purpose of developing teacher evaluation criteria and the weight to be assigned each criterion.

7. In May, 1971, a representative of the La Vega Independent School District tendered a copy of the rating sheet so adopted to Mr. Davis of the United States Department of Justice. No written objection to any of the criteria contained therein was made by any representative of the federal government until on or about July 30, 1971, at which time the faculty-staff dismissals in question had already been effected.

8. Prior to the dismissals complained of, each teacher in the district was scored in accordance with the teacher rating sheet by the principal of the school at which he or she was em-

ployed, and each score was reviewed by the district superintendent. The board of trustees of the district relied exclusively on these scores in making its determinations as to which teachers would be discharged except for fourteen (14) teachers, who were discharged even though they had scores equivalent to or higher than others who were retained. In each such instance, however, the decision of the Board was supported by other non-racial, objective factors reasonably related to the district's needs. For example, a mathematics teacher, Mr. Washington, was discharged with a score of 86 while another, Mr. Arldridge, was retained with a score of 84. However, Mr Arldridge was also qualified to teach industrial training, a subject for which there was a bona fide need within the district that could not be met if he were discharged, and he was retained for this reason. Similar criteria supported the board's choice in the other cases where a teacher was retained in preference to another with an equivalent or higher score. Although no teacher rating sheets were utilized in determining which administrative employees were to be discharged, the record also discloses that non-racial, objective and reasonable criteria were employed in making these decisions.

### Conclusions of Law

"1. The teacher rating sheets used by the Board of Trustees of the La Vega Independent School District in determining which teachers were to be discharged contained objective, non-racial and reasonable criteria in full compliance with Singleton v. Jackson Municipal Separate School District, supra.

2. In those instances where the Board of Trustees departed from the scores shown on the teacher rating sheets in determining whether a faculty-staff member was to be discharged, or did not use the rating sheets, it nevertheless uniformly applied objective, non-racial and reasonable criteria in making its determinations, in full compliance with Singleton v. Jackson Municipal Separate School District, supra.

3. In light of the stipulations as to the employment status of the discharged employees, and in the absence of further evidence on this point, even if the evidence disclosed a violation of the Singleton requirements, which the Court expressly decides it does not, the circumstances do not warrant the equitable relief requested by the plaintiff."

For reasons which we will set forth, we reverse the district court and remand for further proceedings.

### THE OBJECTIVITY OF THE TEACHER RATING SYSTEM

Citing the language of the letters of dismissal and testimonial evidence taken at the first hearing in the district court, the United States argues on appeal that the dismissals were, for the most part, racially motivated. It is unnecessary to deal with this contention because we are of the opinion that the La Vega Independent School District, contrary to the findings and conclusions of the district judge, did not comply with the selection criteria promulgated in *Singleton*, supra, in choosing professional staff members for dismissal. We hold that his findings of fact are "clearly erroneous". Rule 52(a), F.R.Civ.P.; McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

The format of the La Vega District's teacher rating sheet (Government Ex-

hibit 2 referred to in Finding of Fact Number 6, supra) and the instructions for the completion of that sheet are set forth verbatim in the margin.[1]

I.    LA VEGA INDEPENDENT SCHOOL DISTRICT
Teaching Rating Sheet

Name of Teacher _____

1.   Education (Maximum score—10 points)                    Score _____
     Degree _____ Institution _____
     Degree _____ Institution _____
     Degree _____ Institution _____

2.   Work Experience
        (Maximum Score—10 points)                          Score _____

Place:                    Length of Service        Subject Grade Taught
_____
_____

3.   Has Teacher taken National Teacher Exam?
                                                            Score _____
     Yes _____ No _____ Common Score _____

4.   Is personal appearance neat and pleasing? _____
     Is health good?                                        Score _____

5.   Has teacher exhibited bias or prejudice in any of his or her contacts with others in this system or elsewhere?
                                                            Score _____
     Yes _____ No _____ (If answer is *yes*, score no points; if *no*, score 10)

6.   Is teacher cooperative in his or her dealings with:
                                                            Score _____
     (a) Administrators    _____
     (b) Other teachers    _____
     (c) Parents           _____
     (d) Students          _____

7.   Has teacher exhibited ability to control situations in classroom and elsewhere?   _____
                                                            Score _____

8.   Has teacher exhibited teaching ability? _____
                                                            Score _____

9.   Has teacher been willing to accept and perform responsibilities outside the classroom?   _____        Score _____

                    Total Score _____
                    Date _____
                    Rate by _____

### Instructions for Scoring

1.   Score 5 points for Bachelor's degree, 4 more points for Master's degree, and 1 more for 12 or more hours beyond the Master's degree.   Total—10 points.

2.   Score 1 point per year of experience up to 10 years.   Experience beyond 10 years is not scored.

3.   Teachers who have not had the National Teachers Exam are not to receive any score.   Those who have taken it and can produce their common score thereon are to be scored as follows:

| Common Score | Rating | Point Values |
|---|---|---|
| 775 or more | Outstanding | 5 |
| 687 to 730 | Excellent | 4 |
| 649 to 673 | Above Average | 3 |
| 588 to 628 | Average | 2 |
| 538 to 566 | Below Average | 1 |

4.   Score 2 points for neat and pleasing appearance, and 3 points for good health (Total—5 points).

5.   If answer is *Yes*, score no points.   If answer is *No*, score 10 points.

6.   This question has four parts.   Each part is worth 5 points if the rating thereon is favorable.   Total score on this question is 20 points.

We agree with the United States that all but the first three categories on the teacher rating sheet are essentially subjective in nature [2] and in violation of the *Singleton* requirement of objectivity. As if to underscore this fact of subjectivity, the instructions for categories 7 and 8 explicitly advised the rating official that his or her "best judgment" would have to be used to arrive at an appropriate score. Even more telling is the school district's failure in fourteen separate cases to abide by the results of its own teacher rating system in selecting individuals for dismissal.

## ADMINISTRATORS SELECTED FOR DISMISSAL

■ Here again, the United States maintains that the La Vega District was motivated by race in the selection of administrators for dismissal. The absence of established pre-dismissal selection criteria as to administrative personnel, in clear violation of the *Singleton* instructions, makes it unnecessary for us to consider this contention. The district court's post-dismissal finding that all dismissals of administrative personnel were carried out in accordance with objective criteria, in our view, is not supported by the record.

## THE SUBSEQUENT HIRING OF 14 WHITE TEACHERS BY THE LA VEGA DISTRICT

■ It is undisputed that following the July 29, 1971, dismissals, the La Vega District hired 10 new white teachers and rehired 4 white teachers who had resigned or retired prior to the dismissals without first offering these positions to discharged black teachers. The 14 additions to the District's instructional staff were made in clear contravention of the *Singleton* requirements and cannot be justified by the District's assertions that prior to the July 29, 1971, dismissals it had lost 27 white teachers by resignation and that it was scheduled to lose 14 teaching positions in the upcoming school year.

## THE PROPRIETY OF EQUITABLE RELIEF

■ The district court held that even if the La Vega District had dismissed the 67 individuals in violation of the *Singleton* requirements, the United States was not entitled to equitable relief because all but 2 of the dismissed faculty members were employed and because 39 dismissed teachers were actively pursuing their Texas administrative remedies. The United States, on the

---

7. This question measures the teacher's ability to maintain discipline. If the teacher is a *good* disciplinarian, score a maximum of 15 points. Variations from poor to good will have to be scored according to the rater's best judgment.

8. This question deals with the teacher's effectiveness as a classroom teacher. Teachers considered to be *good* are to receive a total of 20 points on this question. Variations on the scale from poor to good must be scored according to the rater's best judgment.

9. A teacher's willingness to accept and perform duties outside the classroom merits 5 points. Maximum score on this question is 5 points.

Each rating must bear the teacher's name who is being rated, the total score, the date of rating, and the signature of the person doing the rating. This evaluation sheet is to be held in the strictest confidence and filed in the office of the school principal.

---

2. We do not suggest that some of the qualities inquired about in questions 4–9 inclusive, of the rating sheet, e. g., health, disciplinary ability, et cetera, are incapable of objective assessment. We do find the standards for rating these qualities as presently set up by the rating sheet to be patently subjective in form and obviously susceptible to completely subjective treatment.

other hand, argues that many of those dismissed were forced to incur additional expenses in seeking and pursuing employment elsewhere and that the invocation of state administrative remedies does not bar simultaneous resort to equitable relief in the federal courts for the redress of constitutional wrongs. In support of the latter contention, the United States cites McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622.

We agree with the United States and find no obstacles to granting equitable relief to the individuals who were improperly dismissed on July 29, 1971, by the La Vega Independent School District.

## PROCEEDINGS UPON REMAND

Promptly upon the going down of our mandate, the district court should direct the La Vega Independent School District to take immediate steps to develop and adopt truly objective, non-racial and reasonable criteria for the selection of staff members for dismissal due to a reduction in student population.[3] Those

3. In this regard, the attention of the district court and the La Vega Independent School District is directed to the sample criteria printed as Appendices A, B and C to the United States' supplemenal brief to this Court. We set them out below:

### APPENDIX A
Chilton County, Colbert County, and
Muscle Shoals Objective Criteria

I. *Teachers*
    A. *Type of Certificate.*
    B. *Number of years of experience:*
        1. In the teaching profession.
        2. In the grade, subject or position which he currently teaches or occupies, or is applying for.
        3. In the system.
    C. *Degree or degrees held.*
    D. *Endorsement in subject area.*
    E. *Number of hours beyond degree.*
    F. *Number of hours of voluntary participation in in-service training, workshops, seminars, etc.*

II. *Principals*
    A. *Degree or degrees held.*
    B. *Number of years of experience:*
        1. As a principal in this system.
        2. As a principal in any system.
        3. In education other than as principal.

III. *Coaches*
    A. Degree or degrees held.
    B. Experience in system.
    C. Sports coached and how long.
    D. College participation in what sports.
    E. Experience in administration of athletic program.
        1. Total.
        2. In system.
        3. Administrative positions held.

### APPENDIX B
Bulloch County Objective Criteria

A. State Board Certification Status
    1. Type of certificate
    2. Approved teaching fields
    3. If at 4 year level—
        (a) Accepted for 5 year certification study by an institution accredited by the *National Council for the Accreditation of Teacher Education*
        (b) Amount of credit accumulated to date toward this certification.
    4. If at 5 year level—
        (a) Accepted for 6 year certification study by an institution accredited by the *National Council for the Accreditation of Teacher Education.*
        (b) Amount of credit accumulated to date toward this certification.

5. If at 6 year level—
(a) Accepted for 7 year certification by an institution accredited by the *National Council for the Accreditation of Teacher Education.*
(b) Amount of credit accumulated to date toward this certification.

B. Degree or Degrees Earned
C. Experience
1. In grade, subject or position now held.
2. In grade, subject or position applying for.
3. Experience in any grade, subject or position other than that now held or applying for.
4. Courses or special training not previously stated that would apply to present position or position seeking and date.
5. Appointments or elections to professional groups, workshops, seminars, etc.
D. Professional Honors, Awards, Citations, Publication, etc.

---

## APPENDIX C

### Objective Criteria Which Have Been Proposed by the United States

1. *Teachers*

#### I. Professional Preparation

A. Certificate

| | |
|---|---|
| Non-Certified Teacher—No Degree | 0 |
| Certified Teacher—No Degree | 5 |
| Certified Teacher—Bachelor's Degree (Teaching out of area(s) of certification) | 20 |
| Certified Teacher—Master's Degree (Teaching out of area(s) of certification) | 30 |
| Certified Teacher—Bachelor's Degree, highest degree held (Teaching in area(s) of certification) | 40 |
| Certified Teacher—Master's Degree and above (Teaching in area(s) of certification) | 70 |

B. Credit Hours
One point for each semester credit hour earned beyond degree held.

#### II. Teaching Experience

Ten (10) points per year up to 20 years; maximum points—200

2. *Principals*

#### I. Professional Preparation

A. Certificate

| | |
|---|---|
| Non-Certified—No Degree | 0 |
| Certified—No Degree | 5 |
| Certified—Bachelor's Degree (Certificate in area other than administration) | 20 |
| Certified—Master's Degree (Certificate in area other than administration) | 30 |
| Certified—Master's Degree and above (Certificate in administration) | 70 |

B. Credit Hours
One point for each semester credit hour earned beyond degree held.

#### II. Experience

A. As Teacher
Five (5) points per year up to 20 years. Do not count years as both teacher and principal.
B. As Principal
Ten (10) points per year up to 20 years. Count years as both principal and teacher as principal.

who were dismissed on July 29, 1971, should be afforded pecuniary compensation for any losses which they may have incurred as a result of such discharges, such as diminution in salaries, additional commutation expenses, and the like. Lastly, the La Vega Independent School District should be directed to offer reinstatement to the persons dismissed July 29, 1971, and thereafter to reselect individuals for dismissal according to truly objective, non-racial and reasonable criteria in time for the 1972–1973 school year.

Let our mandate issue at once.

Reversed and remanded with directions.