Willie McLAURIN et al.,
Plaintiffs-Appellants,

v.

The COLUMBIA MUNICIPAL SEPARATE SCHOOL DISTRICT, et al.,
Defendants-Appellees.

No. 74–3744.

United States Court of Appeals,
Fifth Circuit.

April 22, 1976.

**662**

Nausead Stewart, Fred L. Banks, Jr., Jackson, Miss., for plaintiffs-appellants.

Maurice Dantin, Columbia, Miss., for defendants-appellees.

Before GEWIN and AINSWORTH, Circuit Judges, and MARKEY *, Chief Judge.

AINSWORTH, Circuit Judge:

This appeal arises from a teacher dismissal case involving Alberta Smith Collins, a black teacher displaced in the course of the integration of a dual school system in Columbia, Mississippi.[1] Mrs. Collins challenges a District Court determination that the Columbia Municipal Separate School District and its school board have complied with our earlier order in this case requiring that she be reinstated in her previous position or an equivalent one. *See McLaurin v. Columbia Municipal Separate School District*, 5 Cir., 1973, 478 F.2d 348, 356 (McLaurin I).[2] The central issue on appeal is whether the position Mrs. Collins was offered teaching occupational orientation after *McLaurin I* is equivalent to the home economics position she had held for fourteen years prior to her dismissal. Having concluded that the District Court was not clearly erroneous in finding equivalence, we hold that the School District may comply with our prior mandate by offering Mrs. Collins a position as an occupational orientation teacher, or, if that is no longer practical, by effectively reinstating her in any other position equivalent to that from which she was originally dismissed.

### The Reinstatement Dispute

In *McLaurin I*, we held that Mrs. Collins and four other black teachers who were dismissed at the time of the Columbia school consolidation were entitled to reinstatement, back pay, and possibly attorney fees, because of the School District's failure to comply with our holding in *Singleton v. Jackson Municipal Sepa-*

---

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. The background of the desegregation litigation which led to the creation of a unitary school system in Columbia, Mississippi is described in *McLaurin v. Columbia Municipal Separate School District*, 5 Cir., 1973, 478 F.2d 348, 350.

2. Following the initial panel decision in this case, a petition for rehearing en banc was granted. However, the briefs and oral arguments subsequently submitted led us to conclude that the case did not warrant en banc disposition, *McLaurin v. Columbia Municipal Separate School District*, 5 Cir., 1973, 486 F.2d 1049. Accordingly, the en banc Court was dissolved, and the cause remanded to the original panel, which denied further rehearing.

*rate School District*, 5 Cir., 1969, 419 F.2d 1211, 1218 (en banc), *cert. denied*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970). *Singleton* established that faculty dismissals or demotions necessitated by school system consolidations may be made only "on the basis of objective and reasonable non-discriminatory standards . . . ." The decision not to renew the contracts of Mrs. Collins and her colleagues, in contrast, was reached prior to the promulgation of any objective criteria regarding rehiring; the displaced black faculty members were not given first consideration when subsequent vacancies became available; and the evaluations on which the nonrenewal decisions were supposedly based were made only after the decisions had been finalized. *See McLaurin I*, 478 F.2d at 352. Following our decision in *McLaurin I*, the teachers filed motions in District Court seeking reinstatement, back pay, attorney fees, and other appropriate relief. In order to facilitate disposition of the case, the parties agreed to submit all issues on affidavits, documents, and briefs. The District Court reserved judgment on the back pay and attorney fees issues, pending further proof and briefing on the implications of the Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), with regard to the former, and on the applicability of attorney fees provisions of The Emergency School Aid Act of 1972, 20 U.S.C. § 1617, with regard to the latter. Hence, those issues are not before us on this appeal. Moreover, the reinstatement issues have been resolved with all of the original plaintiffs except Mrs. Collins. Three of the teachers declined reemployment when it was offered to them: one had become disabled, a second had found higher paying employment elsewhere, and a third declined employment and has since moved to Pennsylvania. The fourth was offered and accepted reemployment. Thus, the only issues on this appeal pertain to the reinstatement of Mrs. Collins.

As has been indicated, Mrs. Collins was offered a job teaching occupational orientation after our decision in *McLau-*

*rin I*. She in fact filled that position for approximately two months at the end of the 1973–1974 school year, although she did so under protest, pending the District Court's ruling on her claim that the position was not equivalent to her former home economics job. However, she refused to accept continued employment on the same basis for the next year. She felt that doing so might have the result of locking her into a non-equivalent position, since the School District would be able to point to her increased experience in the area in arguing that her services could be better utilized there than in the home economics field. In addition, she learned during August of 1974 that despite the pendency of her action, a vacant home economics position was offered to a white woman, Daphne Bracey, instead of to her. With regard to this incident, the Superintendent of the School District submitted an affidavit explaining that the contract with Miss Bracey explicitly provided that it was subject to the Court's determination of equivalency in the Collins action, and that Mrs. Collins was qualified to teach occupational orientation whereas Miss Bracey was not.

On September 4, 1974, the Superintendent sent a hand-delivered letter to Mrs. Collins informing her that failure to accept the occupational orientation post by September 6 would be considered a rejection of the position. The letter acknowledged that acceptance would still be subject to the Court's finding with regard to equivalency. The Superintendent took no steps to inform Mrs. Collins' attorney of this ultimatum. The District Court's decision determining that the occupational orientation and home economics positions were equivalent was filed September 5, but neither Mrs. Collins nor her attorney was informed of this decision until much later in the month. Thus, the decision to reject the ultimatum was made without awareness of the equivalency determination.

### The Equivalence Issue

In analyzing whether the occupational orientation position offered to

Mrs. Collins was equivalent to the home economics post she had held prior to her dismissal, the starting point is our delineation of the standards of non-equivalence in *Singleton v. Jackson Municipal Separate School District*, 5 Cir., 1969, 419 F.2d 1211 (en banc), *cert. denied*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970). In that case we defined "demotion" (*i. e.*, placement in a non-equivalent position) as

> any re-assignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

419 F.2d at 1218. Mrs. Collins maintains that assignment to the occupational orientation position is not equivalent to reinstatement as a home economics teacher because it would require her to pursue additional schooling and would result in her receiving less pay, lower retirement benefits, and reduced job security.

The first three of these concerns are interrelated, since they reflect an apparent misunderstanding on the part of Mrs. Collins as to the nature of her certification by the State of Mississippi Department of Education in the occupational orientation area. She maintained that she was only entitled to Class A certification in occupational orientation, whereas she held a Class AAA certificate (the highest available) in home economics. Since pay is calibrated to the level of certification, *see* 10 Miss.Code Ann. § 37–19–5 (Cum.Supp.1975), and retirement benefits are keyed to salary level, *see* 7 Miss.Code Ann. § 25–11–201 (1972), the allegedly lower classification in occupational orientation would result in reduced pay and retirement benefits. Similarly, if Mrs. Collins were correct in assuming that she was only qualified for Class A certification in occupational orientation, additional education would be required to obtain a Class AAA certificate in that field.

The problem with this argument is that it ignores the fact that Mrs. Collins was issued a Class AAA certificate with endorsements in both home economics and occupational orientation on June 13, 1974. This certificate has been included in the record by stipulation of the parties and is valid through August 31, 1984. Under Mississippi law,

> [t]he state board of education is authorized, empowered, and directed to adopt and promulgate rules and regulations governing the issuance of all teachers' certificates and to administer said rules and regulations.

10 Miss.Code Ann. § 37–9–9 (1972). In an affidavit filed by the appellees, Dr. Russell J. Crider, the Supervisor of Teacher Certification for the State Department of Education of the State of Mississippi, and the individual chiefly responsible for teacher certification under the above statute, affirmed that Mrs. Collins was certified in both vocational home economics and occupational orientation. He further stated that in his opinion, based on the objective equivalency of Mrs. Collins' certification in the two areas, positions teaching in either area would be equivalent.

In support of the argument that the position of an occupational orientation teacher is less secure than that of a home economics teacher, Mrs. Collins points to the fact that occupational orientation was not offered in the school where she seeks reinstatement during 1974–1975. This fact, however, merely lends credence to the School District's position that no one but Mrs. Collins was available and qualified to teach the course at the time. We sympathize with Mrs. Collins' concern about relative job security in the two fields, but in view of the School District's strong protestations of her competence in the occupational orientation area and its denial of any difference in the degree of job security associated with the two positions, we conclude that this concern is unfounded.

In reaching the conclusion that the occupational orientation post met the equivalence requirement of *McLaurin I*, the District Court relied heavily on affidavits from superintendents of two Mississippi school districts, officials in Mississippi's State Department of Education, and the Chairman of the Department of Educational Administration and Supervision of the University of Southern Mississippi. With reference to the three previously quoted requirements for equivalence under *Singleton*, these affidavits establish (1) that the occupational orientation and home economics positions are equivalent with regard to remuneration [3] and level of responsibility; (2) that no lesser degree of skill is required to teach occupational orientation, and that, in fact, one of the reasons the District wished to place Mrs. Collins in the orientation position was that she had experience teaching at multilevels and in multiple disciplines which other faculty members lacked; (3) that occupational orientation is an introductory course in the same department as home economics (the Vocational Department) and that Mrs. Collins is certified and well qualified to teach the subject. Further, the affidavits indicated that there is a critical need for the occupational orientation course to assist students in selecting occupational training programs in upper grades. They also point out that the decision to have Mrs. Collins teach occupational orientation instead of home economics was a legitimate management decision designed to use available faculty resources to the best advantage. Relying on the objective criteria for evaluating consolidation-related faculty dismissals endorsed by this Court in *United States v. Texas Education Agency*, 5 Cir., 1972, 459 F.2d 600, 607 n. 3,[4] each of the affiants reached the conclusion that the position tendered to Mrs. Collins was equivalent to that from which she had been dismissed. After reviewing the record, we conclude that the District Court's finding of equivalence was not clearly erroneous, and thus may not be overturned on appeal. Fed.R.Civ.P. 52(a); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

### *Reinstatement*

■ In concluding the portion of its opinion dealing with the reinstatement issue, the District Court stated,

> . . . Alberta Collins has accepted, subject to this Court's finding that she has been offered an equivalent assignment to that she had before. The defendant owes no further duty regarding reinstatement of . . . [this teacher].

As has been indicated, however, Mrs. Collins ultimately declined to continue teaching occupational orientation even on a conditional basis, pending resolution of the equivalence issue. Although it might have been more reasonable for her to accept the provisional occupational orientation contract from a mitigation standpoint, her decision to the contrary should not preclude reinstatement at this time. That decision was made before she was notified of the District Court's equivalency determination. Moreover, it was made at a time when the School District's action in offering the very position she was seeking to a white woman may have intensified her fears that the District was attempting to lock her into a position which, in her view at least, was less desirable than that from which she had been dismissed. Under these circumstances, we do not view her failure to respond to the District's ultimatum that she continue to teach occupational orientation on a provisional basis as an abdication of her right to reinstatement. We accordingly conclude

---

3. Indeed, the School District maintained in its brief and at oral argument that the pay and retirement benefits for an occupational orientation teacher may actually be higher than those for a home economics teacher.

4. Essentially, the objective criteria endorsed in the *Texas Education Agency* case were (1) the type of certificate held; (2) the extent of prior teaching experience; and (3) academic preparation. 459 F.2d at 607 n.3.

that while the District Court's equivalency determination must be sustained, its order must be modified to the limited extent necessary to make it clear that the School District still has an obligation to offer her an employment contract effectively reinstating her in the position from which she was originally dismissed or in an equivalent position.

AFFIRMED AS MODIFIED.