**GEORGIA ASSOCIATION OF EDUCATORS, INC., et al.**

v.

**Jack P. NIX, Individually and as State Superintendent of Schools, State of Georgia, et al.**

**Civ. A. No. C74–1870A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Jan. 15, 1976.

David L. Ross and Theodore G. Frankel, Haas, Holland, Levison & Gibert, Atlanta, Ga., for plaintiffs.

J. David Dyson, Asst. Atty. Gen., Atlanta, Ga., for defendants.

Before BELL, Circuit Judge and O'KELLEY and HILL, District Judges.

## ORDER

O'KELLEY, District Judge:

### INTRODUCTION

This action for declaratory and injunctive relief is brought by the Georgia Association of Educators, Inc. (GAE) and five members of the GAE who are either teachers, principals, or administrators in the public school systems of Georgia. The action is brought against the Georgia State Superintendent of Schools and the members of the Georgia State Board of Education seeking to have this court declare that their regulations, rules, policies, and procedures relating to the use of a minimum score on the National Teacher Examinations (NTE) as one of the requirements for granting a six-year

certification to teachers are unlawful; they seek to enjoin the further use of the requirement and seek to require that a six-year certificate be issued to each of the individual plaintiffs.

## JURISDICTION

■ This action is brought under the provisions of 42 U.S.C. §§ 1981 and 1983. Jurisdiction is conferred under the provisions of 28 U.S.C. §§ 1331(a), 1343(3) and (4), 2201 and 2202. This action attacks the constitutionality of and seeks injunctive relief from a regulation of a state administrative board of state-wide application; therefore, a three-judge court is proper under the provisions of 28 U.S.C. § 2281.

## STATEMENT OF THE CASE

This case centers around the teacher certification procedure of the Georgia State Board of Education. The Board requires that all public school teachers in Georgia be certified, and it has several certification levels. The initial certificate, which is the minimum certification required, is the four-year certificate (B–4 or T–4) which relates to a bachelor's degree. The next certification is the five-year certificate (T–5), and it is issued to those teachers who have earned a master's degree from an accredited college or university. The six-year certificate (T–6) is the next highest certification, and it is the one involved in this suit. To earn this certificate, the following is required:

(1) Eligibility for a five-year certificate in the field in which the teacher seeks the six-year certificate;

(2) Completion of an approved graduate program conferring a degree or diploma as a six-year specialist and consisting of a curriculum of forty-five quarter hours of post-master's work;

(3) Recommendation of an official of the institution issuing the six-year specialist degree verifying that the teacher has completed the post-master's program in the specific field for which the certification is requested;

(4) Completion of three years of acceptable school teaching experience;

(5) Completion of one of the following:

(a) Taking the National Teacher Examination (NTE) and achieving a composite score of 1225 including both the commons and specialized teaching area portions of the exam (or if the area examination is not offered for the particular field in which certification is sought, a score of 575 on the commons section); or

(b) Unconditional admission to candidacy for a doctoral degree, completion of preliminary screening in the doctoral program, completion of the required course work for the degree, and approval of a dissertation topic.

The final and highest certificate offered in Georgia is the seven-year certificate (T–7), and this requires the completion of a doctoral program and the award of a doctorate degree.

By obtaining more advanced teacher certificates, a teacher receives an increase in salary. It is stipulated that the principal benefit of a six-year certificate for any teacher or administrator is an increase in salary of approximately $1,000 per year on the state index plus any additional local supplement. The stated objective of the six-year certificate is to upgrade the education of Georgia teachers and, by increasing their salary, to encourage more qualified people to remain in the teaching profession. As of June, 1974, 4,118 six-year certificates had been issued in Georgia. As of December, 1974, 36 people had obtained six-year certificates by completing the alternate doctoral courses set out in (5)(b) above. The six-year certificate is not a prerequisite for any teaching job in Georgia; any certified teacher may hold the same teaching job whether he has a four, five, or six-year certificate.

The National Teacher Examinations (NTE) are standardized examinations developed by the Educational Testing Service of Princeton, New Jersey (E.T.S.) which consist of two parts: (1) a commons examination which is designed to measure basic knowledge gained in the undergraduate curriculum and (2) various specialized teaching area examinations which examine knowledge in the specialized area for which a student has prepared himself. The test is prepared and designed for administration to college seniors with the exception of a few of the area examinations. The scores are scaled so they are comparable over different years. The NTE is not designed for use in assessing inservice teachers but is designed only to measure the undergraduate background academic preparation for prospective teachers.

The stipulated purpose of the NTE in Georgia is:

(1) To insure that the teacher achieving a six-year certificate has, in fact, gained valuable new knowledge as a result of his extra education; and

(2) As a device to recognize a superior or "master teacher" who should be rewarded with a higher salary level.

In an attempt to utilize the NTE in this manner, the Georgia State Board of Education requires a minimum NTE score of 1225 for a six-year certification; however, it has conducted no empirical studies or research to establish that this required 1225 score is valid for the purpose for which it is used. The defendants have made no attempt to compare and analyze the information tested on the NTE with the curriculum criteria for the Georgia approved six-year specialist programs. The defendants have conducted no empirical studies or research which would show that the 1225 score would ensure that a student in a Georgia approved six-year specialist program has received new and superior knowledge. The defendants have conducted no empirical studies or research to show that a 1225 score is in any way related to a teacher's performance. In short, no attempt has been made by the defendants to validate the use of the NTE and the 1225 required score with respect to its stated purpose.[1]

## THE E.T.S. POSITION

The E.T.S. position with respect to Georgia's use of the 1225 score on the NTE as a requirement for the six-year certificate is that the NTE is being misused by the Georgia State Board of Education. The NTE is not designed to test or predict the performance of inservice teachers. The NTE Guidelines state that it is unreasonable to choose a qualifying score on the basis of unvalidated criteria. The E.T.S. feels that studies should be conducted to determine the validity of all selection measures. The E.T.S. maintains that the NTE is *NOT* designed (1) to assess learning in postgraduate courses in a six-year specialist

---

1. The State Board of Education did appoint a Teacher Certification Study Committee to investigate the continued use of the 1225 NTE score. Public meetings were held where everyone who spoke was against the continued use of the NTE. The Committee noted the repeated complaints that the NTE did not measure teacher performance but said that this was not the intended use of the NTE, but, rather, the NTE was used by the Board to gain a measure of an individual applicant's knowledge level. A resolution incorporating this fact was unanimously passed by the State Board of Education on November 8, 1973. The Study Committee met again to discuss the NTE in September of 1974, and, after discussion, reaffirmed its decision to recommend no change in the policy. A predecessor committee in 1970 investigated the use of the NTE in the six-year certificate process and stated that the NTE was an excellent screening device since it correlated highly with achievement. It further stated that although it had a low correlation with performance and teacher relationships, it was the most objective screening instrument available. The committee finally stated that it was concerned with the general competency of the applicant. No basis was given for any of the committee findings. It should also be noted that the purpose of the NTE alluded to by the Teacher Certification Study Committee is contrary to the stipulated purpose of that test as noted in the text of this opinion.

degree approved program in Georgia; (2) to be used as an instrument for certification at a post-master's degree level; (3) to be used as an instrument for determining the pay level of inservice teachers; (4) to be used as an instrument for measuring teacher performance of inservice teachers with three or more years experience. It is significant to note that scores on any given specialized area exam cannot be equated with scores on another specialized area exam—e. g., a score of 500 on the NTE Biology and General Science Examinations would disqualify about 2% of biology majors, whereas the same cutoff score on the NTE German Examination would eliminate nearly 17% of all German majors. The E.T.S. also considers any kind of single cutoff score on the NTE as arbitrary because it does not take into account errors of measurement, i. e., scores of any one person could vary as much as 60 points on either side of 1225 if one took the exam on several different occasions. The E.T.S. considers this use even more arbitrary because the same cutoff score is set for all teaching area fields, and, as mentioned above, scores in one teaching area exam cannot validly be compared with another. The E.T.S. has not conducted any study which would show that the 1225 score is a reasonable or valid cutoff point for use in the six-year certification. There is nothing in the design of the NTE which would permit the assumption that a score of 1225 on the exam indicates that the candidate making that score has obtained knowledge comparable to that which would be obtained in doing the extra course work necessary for a doctoral degree. The NTE was not designed in any way to be used at the graduate level, and it is at this level that Georgia utilizes the test. The E.T.S. has communicated its position to the defendants that they are misusing the NTE on several occasions, and the Georgia State Board of Education has been aware from letters, oral conversations, and the NTE Guidelines that it has been misusing the NTE in the opinion of the E.T.S.

### PLAINTIFFS' CONTENTIONS

The challenge in this action is limited to the portion of the six-year certificate requirement that calls for taking and obtaining a minimum score on the NTE. The plaintiffs challenge this requirement as being unconstitutional in three respects. First, they contend that it is racially discriminatory because the passing score adopted eliminates far more blacks than whites from consideration for the six-year certificate; that this racially discriminatory effect violates the equal protection clause because the exam has not been validated and is not related for the purpose to which it is put.[2] Second, they contend that, notwithstanding any racial discriminatory effect, the classification created by the NTE is irrational and arbitrary and thus violates equal protection under the traditional analysis. In this respect the plaintiffs contend that the required cutoff score creates a classification of (a) those who pass and qualify for the six-year certificate and (b) those who do not pass but otherwise qualify for the six-year certificate. They contend that this is violative of equal protection because the exam was not meant to and cannot validly differentiate those who should be certified from those who should not be so certified; therefore, it is irrational and arbitrary. Third, they contend that the denial of the six-year certificate on the basis of the arbitrary and capricious application of the exam violates the due process clause.

### DEFENDANTS' CONTENTIONS

The defendants contend that the use of the NTE is not unconstitutional, and their basis for this contention is twofold. First, the defendants contend that the existence of an alternative means of obtaining the six-year certificate means that one does not necessarily have to

---

2. In view of this court's holding below, no consideration need be given to plaintiffs' contention with respect to racial discrimination.

take the NTE and that this, therefore, remedies any of the alleged inequities in the NTE scores as one of the certification criteria. Second, they contend that the NTE score is not the sole criteria for the granting of the six-year certificate but is coupled with other requirements such as inservice experience (three years of acceptable school teaching experience); advanced academic specialty work (45 hours of post-master's work); and recommendations from outside sources, and the defendants thus contend that these additional criteria amply supplement the application of the NTE. The defendants also contend that there is an overriding purpose in using the NTE test, but, rather than showing that the NTE test score accomplishes or is related to this purpose, they merely repeat their stated objective in the six-year certification program—that being the providing of an incentive to individual teachers to improve and expand their own personal qualifications as teachers and to retain the more highly qualified educators in the instructional field and thereby improve the instructional services afforded in Georgia schools.[3]

## DISCUSSION

■ It should be noted at the outset that Georgia has a right and even a duty to adopt requirements which will ensure that its teachers have at least the minimum necessary qualifications to be effective teachers. To ensure such, academic requirements can be established and achievement tests properly designed and validated can be utilized. *United States v. North Carolina,* 400 F.Supp. 343 (E.D.N.C.1975) (3-judge); *cf. Milner v. Burson,* 320 F.Supp. 706 (N.D.Ga.1970) (3-judge). The problem with Georgia's use of the NTE, as is noted in more detail below, is that it is being used for a purpose for which it is not designed, and

it has never been validated to establish that it fulfills that purpose.

As noted above, the plaintiffs' first contention is that the application of the NTE score requirement is racially discriminatory. After considering the stipulated facts of record, this court is of the opinion that there is no need to consider this contention because, without ever reaching the question of the racial discriminatory nature of the use of the NTE in the six-year certification process, the defendants' use of the NTE can readily be found to be violative of equal protection under the traditional analysis as establishing a classification which is arbitrary in that it is not rationally related to the purpose for which it is designed. In *Armstead v. Starkville Municipal Separate School Dist.,* 461 F.2d 276 (5th Cir. 1972), the Fifth Circuit dealt with a case where the school district required incumbent teachers and future applicants to score a minimum score on the Graduate Record Examination (GRE). No validation tests or studies had been undertaken by the school district to show that this test was related to the purpose for which it was put. The district court found that a classification was made which discriminated on the basis of race and that the defendants had failed to show an overriding purpose to justify the use of the test. In affirming the district court, the Fifth Circuit stated that it did not need to consider the issue of racial discrimination in the classification because the use of the GRE was unconstitutional even under the traditional equal protection analysis since it was not reasonably related to the purpose for which it was used. The court said that the classification was arbitrary, stating:

> We agree with the lower court's finding that the GRE score requirement was not a reliable or valid measure for choosing good teachers. It was undis-

---

**3.** Defendants apparently feel that the existence of a valid stated purpose for the NTE is all that is necessary to justify its use. They have totally failed to come to grips with the fact

that if a test in no way accomplishes that purpose or is in no way related to that purpose, then the use of the test is improper.

puted that the GRE was not designed to and could not measure the competency of a teacher or even indicate future teacher effectiveness. However, it was established that the cutoff score would eliminate some good teachers. Consequently, we find that it has no reasonable function in the teacher selection process.

461 F.2d at 280. In light of the stipulated facts with respect to the NTE, its purpose, design, capabilities, and the manner in which it is being used without benefit of any validation tests, it is difficult to conceive of how the use of the NTE is rationally related to the purpose for which it is being used. The stipulated purpose of the defendants in using the NTE score in the six-year certification process is, as noted above:

(1) to insure that the teacher achieving a six-year certificate has, in fact, gained valuable new knowledge as a result of his extra education; and

(2) as a device to recognize a superior or "master teacher" who should be rewarded with a higher salary level.

There is absolutely nothing in the record which indicates that the use of the NTE in any way furthers the above purposes. No studies have been made by the defendants or anyone else to show that the NTE is in any way related to testing knowledge gained in post-graduate work. The record discloses that it is designed for recent college graduates to measure knowledge gained in *undergraduate* school; the NTE is not designed to assess learning in post-graduate courses. The record also discloses that the NTE is not designed to assess the degree of learning in the six-year degree program. Furthermore, there is nothing to indicate that the NTE score correlates with the knowledge one might achieve in completing the alternative for the six-year certification—doing the extra course work necessary for a doctoral degree. These facts seem to belie reliance on the NTE to accomplish purpose number 1 above. Furthermore, with respect to purpose number 2, no studies have been conducted by defendants or anyone else to show that the NTE is in any way related to the purpose of evaluating a teacher's performance. In fact, the record discloses that the test was clearly not designed to measure such performance, and it shows that the defendants have undertaken no studies which would tend to establish that the NTE could be so used. Where no study has been conducted to determine if a cutoff score on an examination could be considered to be valid and reliable in fulfilling the purpose for which it was used, the use of the examination has been stricken as violative of equal protection. *Baker v. Columbus Municipal Separate School Dist.,* 462 F.2d 1112 (5th Cir. 1972); *Armstead v. Starkville Municipal Separate School Dist., supra.*

One fact which appears to make the use of the 1225 cutoff score even more arbitrary is the fact scores on one specialized area examination of the NTE cannot be equated to scores on another specialized area examination. This means that some teachers could be disqualified because of the particular area of their speciality even though they had the same qualifications otherwise.

The general principle of equal protection analysis is that a state may accord different treatment to persons placed by it into different classes; however, the classifications of persons to be accorded the different treatment cannot be made upon arbitrary criteria. Arbitrariness can be measured by the degree of correlation between the standard which is used to classify (here the NTE score of 1225) and the valid objective. *See Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911); *cf. Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). The question for the court in this instance is whether or not the defendants have established a rational relationship

between the minimum NTE score required and the stated purpose of the test and the six-year certificate.

As mentioned above, the defendants attempt to avoid any unconstitutionality in their use of the NTE score by arguing that there is an alternative means of obtaining the six-year certificate which does not require the taking of the NTE. In this case, this alternative to taking the NTE is to complete the basic requirements for a doctorate degree to include approval of a dissertation topic. Defendants have offered no authority for their proposition that the presence of this alternative cures any defects in the classification created by their use of the NTE minimum score. If the NTE minimum score requirement is found to be totally arbitrary because it has no rational relation to the purpose for which it is used, it is difficult to conceive of how the defect in this classification is cured by the existence of another way of obtaining the six-year certificate. There are still classifications made with respect to those who have not completed the basic doctoral requirements for the alternative method: (1) all of those persons who have completed the requirements for the six-year certificate and who have scored 1225 or higher on the NTE and (2) all of those persons who have completed the requirements for the six-year certificate but who have failed to score 1225 on the NTE. There would be no rational basis for treating plaintiffs differently from the over 4,000 persons who fit within class (1) above and who have obtained the six-year certificate without pursuing a doctoral program.

In the case of *Armstead v. Starkville Municipal Separate School Dist., supra,* where the employment requirement was a minimum requirement on the GRE examination, there also existed an alternative—that of obtaining a master's degree. The district court had held that the use of both of these was unconstitutional. It noted that Mississippi State University was the only university in Starkville and the natural place for those teachers to seek their master's degree. Since Mississippi State University required a GRE score for regular admission of 900 and for provisional admission of 700 and since the school board had required a score of 750 for employment, the court found that the effect of having the master's degree requirement as an alternative was to indirectly require a GRE cutoff score essentially equivalent to the policy. The Fifth Circuit affirmed the district court so far as it held that the policy of requiring the 750 score on the GRE was arbitrary and thus unconstitutional; however, it refused to hold that the master's degree requirement was unconstitutional. In essence then, the Fifth Circuit held unconstitutional an arbitrary and racially discriminatory classification despite the fact that an alternative method existed which it refused to hold unconstitutional. Defendants contend that this case is distinguishable because both methods required the GRE. In this light it would appear that defendants are attempting to say what the Fifth Circuit refused to say—that is, that the master's degree requirement was also unconstitutional. In fact, the master's degree requirement was left intact so that an alternative remained, and the GRE minimum score requirement was stricken notwithstanding the alternative.

If some alternative method were to be held to be sufficient to cure the arbitrariness of a requirement in another method of certification, it would seem that such alternative method would have to be a viable and real alternative. Out of 4,118 persons who have been issued six-year certificates since June, 1974, 36 or fewer [4] had received them through the

4. As of December, 1974, there had been 36 obtaining six-year certificates through the alternative method. The 4,118 number cited above is the number of six-year certificates issued through June, 1974. There is nothing in the record as to the number gaining the certificate through the alternative means as of June, 1974, but it could not be more than 36. Similarly, there could likely be more than 4,118 certificates issued overall by December, 1974, meaning that the ratio of those gaining the certificate by means of the NTE *vis-a-vis* the alternative method would be even greater.

"alternative" route. This statistic alone would tend to negate its existence as a viable alternative. Also, the six-year degree programs are generally designed so that full-time teachers can continue to teach and earn their six-year specialist degree at night or during the summers. The same is not true in pursuing a doctorate—where a full-time residence is generally required for one year (although other arrangements can sometimes be made between the student and the school so the doctoral degree can be pursued without the one-year residence). This would mean that the alternative method would generally cause the person to stop work and go to school full time and would, thus, be much more time consuming and expensive than making the 1225 score on the NTE.

■ The defendants' other basis for upholding the requirement is the allegation that it is permissible to use the NTE score in this instance because it is not the sole determinative factor in the granting of the six-year certificate but that there exist other criteria for such award which must also be satisfied. These additional criteria are inservice experience, advanced academic speciality work, and recommendations from outside sources. Defendants cite *Lee v. Macon County Bd. of Educ.,* 463 F.2d 1174 (5th Cir. 1972), as standing for the proposition that when used with other criteria, the use of the NTE is not objectionable. It should be noted that there was no cutoff score which would automatically eliminate a person in *Lee,* but the NTE score was merely one factor to be considered along with others. In fact, the Fifth Circuit, in upholding the use of the NTE in *Lee,* cited *United States v. Texas Education Agency,* 459 F.2d 600 (5th Cir. 1972). In *Texas Education Agency,* the court directed the attention of the district court and the school board to sample criteria, none of which used NTE scores. Similarly, in *Teel v. Pitt County Bd. of Educ.,* 272 F.Supp. 703 (E.D.N.C. 1967), a number of factors were to be considered in the hiring process; how-

ever, an absolute minimum cutoff score on an examination was not involved. In the present case it is not a matter of the NTE score's being considered along with other criteria; if the score of 1225 is not attained, even the most outstanding credentials in the other areas will not assist a candidate. In *Armstead v. Starkville Municipal Separate School Dist., supra,* there were other requirements such as personal and professional information forms, outside references, and job interviews; however, as the Fifth Circuit correctly pointed out, the minimum GRE score was the *sine qua non* for consideration since if that score were not attained, the applicant was not considered, irrespective of his ability with respect to the other criteria. The same situation exists in the case *sub judice.* As an illustration, it is conceivable that the following situation could exist under the present test:

*Student A*: Student A has taught in the public school system for the required three years. Her teaching experience shows her to be acceptable but not outstanding. She has a master's degree and has completed an approved six-year specialist program. In both her master's program and the six-year program, she completed all requirements for the degree, but her grades were at the minimum acceptable level. She took the NTE and scored 1225. (Her specialty exam portion of the NTE was in an area where a larger number of people did well than in other specialty areas.)

*Student B*: Student B has taught in the public school system for the required three years. She has been an outstanding teacher, highly praised by all who come in contact with her; she has been voted the outstanding teacher in the school on several occasions and has been a Star teacher; in every fashion she has been truly outstanding as a teacher and has shown great potential. She has a master's degree and has completed an approved six-year specialist program. In each of these programs she has been an outstanding

student, and, due to her hard work and diligence, she has had grades in the top of her class. She took the NTE and scored 1224. (Her specialty exam portion of the NTE was in an area where a smaller number of people did well than in the other specialty areas.)

Under the present requirements, Student A would be issued a six-year certificate whereas Student B would not. This illustration emphasizes that this is not a case where there are a number of criteria to be weighed and considered with respect to one another but, rather, is a case where the NTE minimum score is the *sine qua non* for consideration for the six-year certificate, irrespective of the person's qualifications on the other criteria.

### CONCLUSION

██ The use of the minimum NTE score of 1225 as one of the requirements for the issuance of the six-year certificate by the defendants has no rational relationship to the stated purpose of the six-year certificate, and, as such, it creates an arbitrary classification violative of the equal protection clause.

Accordingly, the defendants, their successors in office, agents, employees, and all persons acting in concert with them are hereby enjoined from requiring Georgia educators to attain a minimum score on the National Teacher Examination (NTE) as a condition for obtaining a six-year certificate in Georgia, and the defendants and their successors in office are ordered to issue a six-year certificate in the appropriate specialty to each of the individual plaintiffs.